**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 12-2272

COLON HEALTH CENTERS OF AMERICA, LLC; WASHINGTON IMAGING
ASSOCIATES-MARYLAND, LLC, d/b/a Progressive Radiology,

Plaintiffs - Appellants,

v.

BILL HAZEL, in his official capacity as Secretary of Health
and Human Resources; BRUCE EDWARDS, in his official capacity
as Chairman of the Virginia State Board of Health; PAUL
CLEMENTS, in his official capacity as member of the Virginia
State Board of Health; KAY R. CURLING, in her official
capacity as member of the Virginia State Board of Health;
ERIC DEATON, in his official capacity as member of the
Virginia State Board of Health; JOHN DETRIQUET, in his
official capacity as member of the Virginia State Board of
Health; JAMES E. EDMONDSON, JR., in his official capacity as
member of the Virginia State Board of Health; STEVEN R.
ESCOBAR, in his official capacity as member of the Virginia
State Board of Health; H. ANNA JENG, in her official
capacity as member of the Virginia State Board of Health;
CHARLES K. JOHNSON, in his official capacity as member of
the Virginia State Board of Health; BENNIE MARSHALL, in his
official capacity as member of the Virginia State Board of
Health; MARY MCCLUSKEY, in her official capacity as member
of the Virginia State Board of Health; M. CATHERINE SLUSHER,
in her official capacity as member of the Virginia State
Board of Health; GAIL TAYLOR, in her official capacity as
member of the Virginia State Board of Health; AMY VEST, in
her official capacity as member of the Virginia State Board
of Health; ERIC O. BODIN, in his official capacity as Acting
Director of the Office of Licensure and Certification and
Director of the Division of Certificate of Public Need;
MAUREEN DEMPSEY, in her official capacity as State Health
Commissioner; JOHN W. SEEDS, in his official capacity as
member of the Virginia State Board of Health,

Defendants - Appellees.

-------------------------------

PACIFIC LEGAL FOUNDATION; CURVEBEAM, LLC,

            Amici Supporting Appellants.

_____

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, Senior District Judge. (1:12-cv-00615-CMH-TCB)

_____

Argued: September 19, 2013        Decided: October 23, 2013

_____

Before WILKINSON and KING, Circuit Judges, and Samuel G. WILSON, United States District Judge for the Western District of Virginia, sitting by designation.

_____

Affirmed in part, reversed in part, and remanded by published opinion. Judge Wilkinson wrote the opinion, in which Judge King and Judge Wilson joined. Judge Wilson wrote a concurring opinion.

_____

**ARGUED:** Robert McNamara, INSTITUTE FOR JUSTICE, Arlington, Virginia, for Appellants. Earle Duncan Getchell, Jr., OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees. **ON BRIEF:** William H. Mellor, Lawrence Salzman, Darpana M. Sheth, INSTITUTE FOR JUSTICE, Arlington, Virginia, for Appellants. Kenneth T. Cuccinelli, II, Attorney General of Virginia, Michael H. Brady, Assistant Solicitor General, Patricia L. West, Chief Deputy Attorney General, Wesley G. Russell, Jr., Deputy Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees. Timothy Sandefur, PACIFIC LEGAL FOUNDATION, Sacramento, California, for Amicus Pacific Legal Foundation. Lewis S. Wiener, David W. Arrojo, SUTHERLAND ASBILL & BRENNAN LLP, Washington, D.C., for Amicus Curvebeam, LLC.

_____

WILKINSON, Circuit Judge:

Appellants are out-of-state medical providers who seek to open facilities in Virginia similar to those they operate in other states. They are hindered by Virginia's certificate-of-need requirement, which they challenged in the court below under a variety of constitutional theories. That court dismissed the suit for failure to state a claim upon which relief could be granted. We reverse the dismissal of appellants' Commerce Clause claims, affirm the dismissal of their Fourteenth Amendment claims, and remand for further proceedings in accordance with this decision.

I.

A.

In order to launch a medical enterprise in the state of Virginia, a firm is required to obtain a "certificate of public need." Va. Code Ann. §§ 32.1-102.1 et. seq.; 12 Va. Admin. Code §§ 5-220-10 et seq. Virginia's certificate-of-need program governs most medical capital expenditures undertaken in the state, including the construction of new facilities and the addition of new equipment or services to an existing facility. It does not, however, apply to the replacement of existing equipment. At its core, the program mandates that an applicant demonstrate, within the relevant region, a public need for the

3

service that it seeks to offer. Va. Code Ann. § 32.1-102.3(A). The primary purposes of the requirement are to preclude the development of excess capacity, to ensure proper geographical distribution of medical facilities, to protect the economic viability of existing providers, and to promote the provision of cost-effective medical services. Appellees' Br. at 2-3.

In determining whether a particular applicant has demonstrated a sufficient public need for its proposed services, the State Health Commissioner is required to consider a variety of factors. Va. Code Ann. § 32.1-102.3(B)(1)-(8). No single factor is dispositive. The Commissioner must consider, for instance, "[t]he extent to which the proposed service or facility fosters institutional competition that benefits the area to be served," in addition to "[t]he relationship of the project to the existing health care system of the area to be served, including the utilization and efficiency of existing services or facilities." Id. § 32.1-102.3(B)(4)-(5).

Firms that desire to obtain a certificate of need are required to navigate a potentially lengthy, costly, and unpredictable application process. The cost of applying is pegged at one percent of the proposed expenditure, with a cap of $20,000. In the review scheme, different types of submissions are grouped into subcategories for simultaneous review in a process referred to as "batching." The statute facially requires

4

the review process to be completed within 190 days of the start of the relevant batching cycle.

Following the submission of an application, the appropriate regional health planning agency must complete its initial investigation within 60 days. This stage of review includes a public hearing in proximity to the site of the proposed expenditure. Affected persons are permitted to submit data to assist the agency in its task. Subsequent to this preliminary examination, the agency must provide the Department of Health with its recommendation regarding the disposition of the application.

The Department is then required to determine whether an informal fact-finding conference is warranted. Such a conference will be held if the Department independently determines that it is necessary or if an intervening party demonstrates that good cause exists to hold such a hearing. Good cause exists if "(i) there is significant relevant information not previously presented at and not available at the time of the public hearing, (ii) there have been significant changes in factors or circumstances relating to the application subsequent to the public hearing, or (iii) there is a substantial material mistake of fact or law in the Department staff's report on the application or in the report submitted by the health planning

5

agency." Id. § 32.1-102.6(G); see also 12 Va. Admin. Code § 5-220-230(A).

The date on which the record closes varies depending on whether an informal fact-finding conference is conducted. An application is deemed approved if the Commissioner fails to issue a decision within 70 days of the closing of the record. Appellants allege that "[w]ithout an informal fact-finding conference, the entire application process and review can take six to seven months to complete. If an informal fact-finding conference is requested by any person, the certificate-of-need process can take significantly longer." Compl. ¶ 136. In their brief before this court, appellants elaborate on this claim by asserting that the process "can take literally years." Appellants' Br. at 11.

B.

Appellants, Colon Health Centers and Progressive Radiology, are medical providers who seek to avoid the purportedly onerous burdens imposed by the certificate application process. Each desires to offer potentially valuable services in the Virginia market. Colon Health "combines the advantages of the two prevailing colon-cancer screening methods in a 'one-stop shop' that screens, diagnoses, and treats colon cancer." Compl. ¶ 47. Traditional colon-cancer screening involves an invasive procedure referred to as optical colonoscopy. The alternative,

6

virtual colonoscopy, relies on noninvasive computed tomography (CT) scans but, unlike optical colonoscopy, does not permit the treating physician to immediately remove any detected polyps. Instead, a second visit is typically required.

Colon Health circumvents this problem by exporting the images captured via virtual colonoscopy to a team of radiologists, who immediately scan the images for polyps. They report their conclusions within an hour to an on-site gastroenterologist, who is able to perform the necessary surgery without recalling the patient for a second visit. This streamlined approach reduces the cost and inconvenience of colonoscopy, thus encouraging a higher percentage of at-risk individuals to undergo screening.

Colon Health currently provides joint virtual colonoscopy and treatment services at offices in Delaware and New Jersey. Its attempts to enter the Virginia market, however, were stymied after potential competitors intervened to oppose its certificate-of-need application. Id. ¶ 140. It alleges that, in the absence of the certificate requirement (which covers CT scanners), it would open Virginia facilities offering its unique package of services.

Progressive Radiology specializes in using magnetic resonance imaging (MRI) to diagnose neurological and orthopedic injuries. Id. ¶¶ 75-76. Progressive currently maintains

radiology facilities in Maryland and the District of Columbia. It formerly operated a radiology business in Virginia, but ceased to do so when the facility which had contracted for its services was purchased and the contract subsequently terminated. Like Colon Health, Progressive alleges that the certificate requirement, which covers MRI machines, deters it from providing its specialized services in the Commonwealth. Progressive estimates that it would serve approximately 400 patients per month if it were permitted to reenter the market.

Notably, Virginia does not contend that either Colon Health or Progressive is unqualified to render the services that each seeks to offer in the state, nor does it deny that the firms' respective facilities would be financed entirely by private sources of funding. It also makes no attempt to contest appellants' assertion that the proffered services are medically uncontroversial and would be performed by state-licensed physicians. Id. ¶ 41.

Appellants challenged the certificate program in the district court, alleging that it violates the dormant Commerce Clause in addition to the Fourteenth Amendment's Equal Protection, Due Process, and Privileges or Immunities Clauses. The court concluded, with respect to the dormant Commerce Clause, that the certificate-of-need program was nondiscriminatory, served legitimate local purposes, and imposed

8

negligible burdens on interstate commerce. J.A. 142-47. With respect to appellants' Fourteenth Amendment challenges, the district court held that the statute was supported by a rational basis. Id. at 131-42. In an opinion that reproduced, almost verbatim, appellees' memorandum in support of their motion to dismiss, the court dismissed the entire suit under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Id. at 147. This appeal followed.

## II.

Appellants' most serious challenge to the certificate-of-need requirement is predicated on the dormant aspect of the Constitution's Commerce Clause. The Commerce Clause authorizes Congress "[t]o regulate Commerce . . . among the several States." U.S. Const. art. I, § 8, cl. 3. By its terms, the clause does not explicitly restrain the conduct of the states. It is "well-established," however, "that this affirmative grant of authority implies a 'negative' or 'dormant' constraint on the power of the States to enact legislation that interferes with or burdens interstate commerce." Brown v. Hovatter, 561 F.3d 357, 362 (4th Cir. 2009) (citing Dennis v. Higgins, 498 U.S. 439, 447 (1991)). As relevant here, "[t]he dormant Commerce Clause is implicated by burdens placed on the flow of interstate commerce

9

-- the flow of goods, materials, and other articles of commerce across state lines." Id. at 364.

Modern dormant Commerce Clause jurisprudence is motivated primarily by a desire to limit "economic protectionism -- that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." Dep't of Revenue of Ky. v. Davis, 553 U.S. 328, 337-38 (2008) (internal quotation marks omitted). By invalidating statutes that unlawfully impede interstate commerce, courts effectuate the Framers' desire to prevent the "economic Balkanization" "'that had plagued relations among the Colonies and later among the States under the Articles of Confederation.'" Id. at 338 (quoting Hughes v. Oklahoma, 441 U.S. 322, 325-26 (1979)).

## A.

As the Court's concern with economic protectionism suggests, "[t]he principal objects of dormant Commerce Clause scrutiny are statutes that discriminate against interstate commerce." CTS Corp. v. Dynamics Corp. of Am., 481 U.S. 69, 87 (1987) (emphasis added). "'[D]iscrimination' simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality, 511 U.S. 93, 99 (1994). A statute may discriminate "facially, in its practical effect, or in its purpose." Envtl. Tech. Council v.

10

Sierra Club, 98 F.3d 774, 785 (4th Cir. 1996) (citing Wyoming v. Oklahoma, 502 U.S. 437, 454-55 (1992)).

The discrimination test thus has an empirical as well as a formal dimension: merely noting a law's facial neutrality is insufficient under this analysis. "The principal focus of inquiry must be the practical operation of the statute, since the validity of state laws must be judged chiefly in terms of their probable effects." Lewis v. BT Inv. Managers, Inc., 447 U.S. 27, 37 (1980); see also Yamaha Motor Corp. v. Jim's Motorcycle, Inc., 401 F.3d 560, 568 (4th Cir. 2005). In order to prove discriminatory effect, for instance, plaintiffs must demonstrate that the challenged statute, "if enforced, would negatively impact interstate commerce to a greater degree than intrastate commerce." Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 335 (4th Cir. 2001).

In conducting the discrimination inquiry, a court should focus on discrimination against interstate commerce -- not merely discrimination against the specific parties before it. See Exxon Corp. v. Governor of Md., 437 U.S. 117, 127 (1978) (noting that the Commerce Clause "protects the interstate market, not particular interstate firms"). The district court opinion here appeared to contravene this principle at various points. See J.A. 145-46 (declining to find a substantial burden on interstate commerce in part because appellants are "two

11

relatively small businesses"). Focusing exclusively on discrimination against individual firms, however, improperly narrows the scope of the judicial inquiry and has the baneful effect of precluding certain meritorious claims. For while the burden on a single firm may have but a negligible impact on interstate commerce, the effect of the law as a whole and in the aggregate may be substantial.

B.

State laws that discriminate against interstate commerce in any of the three ways identified by this court -- facially, in practical effect, or in purpose -- are subject to "a virtually per se rule of invalidity." Wyoming, 502 U.S. at 454-55 (internal quotation marks omitted). Under this variant of "strict scrutiny analysis," Waste Mgmt. Holdings, 252 F.3d at 334, a court must invalidate the challenged law "unless the state demonstrates 'both that the statute serves a legitimate local purpose, and that this purpose could not be served as well by available nondiscriminatory means.'" Yamaha, 401 F.3d at 567 (quoting Maine v. Taylor, 477 U.S. 131, 138 (1986) (internal quotation marks omitted)).

Here, appellants concede that Virginia's certificate-of-need law is not facially discriminatory. Appellants' Br. at 21 n.3. The statute applies to all firms that seek to engage in the covered activities (e.g., expansion of an existing facility or

12

construction of a new one), regardless of their geographical location.

Appellants do, however, allege discrimination in both purpose and effect. Compl. ¶¶ 200-07. With respect to purpose, they declare that "[t]he primary goal of Virginia's certificate-of-need program is to provide current healthcare providers with a government-backed shield from competition." Id. ¶ 103. More concretely, they point to an implementing regulation which states that the certificate requirement is intended, at least in part, to "'discourage[] the proliferation of services that would undermine the ability of essential community providers to maintain their financial viability.'" Id. ¶ 104 (quoting 12 Va. Admin. Code § 5-230-30). Under this theory, since current medical providers are by definition in-state entities, a major purpose of the certificate requirement is to protect them at the expense of new out-of-state entrants, such as Colon Health and Progressive. Id. ¶¶ 43, 103, 200.

Appellants' allegations of discriminatory effect are rooted in the administrative process prescribed by the statutory text. As noted, the relevant code sections include a proviso authorizing individuals to request an informal fact-finding conference to further examine the implications of a particular application. Va. Code Ann. § 32.1-102.6; see also 12 Va. Admin. Code § 5-220-230(A). Appellants assert that the default process

13

requires between six and seven months to complete, but that the addition of an informal fact-finding conference can result in the process taking "significantly longer." Compl. ¶ 136. Such a prolonged delay may occur in part because, "[d]espite the 'informal' label, [fact-finding conferences] can resemble full-blown litigation, involving attorneys, adversarial parties, and expert witnesses." Id. ¶ 134. Appellants further allege that, "[u]pon information and belief, fact-finding conferences are almost exclusively requested by entities that would be in economic competition with" the applicant. Id. ¶ 137.

According to this characterization, Virginia's certificate-of-need program grants established, in-state economic interests the power to obstruct the market entrance of new, primarily out-of-state competitors in two ways. First, by requesting fact-finding conferences, established interests can dramatically lengthen the application process, thus increasing the costs and uncertainty borne by the applicant. Second, objecting firms may influence the substantive outcome of the process through an effective adversarial presentation at the conference. Apart from these practical advantages, the intervention proviso also grants a structural edge to local firms: if an established, in-state facility desires to expand its operations, it will necessarily face one fewer objector than would an out-of-state firm that seeks to enter the market de novo -- itself.

14

All these allegations raise practical questions of fact. It is entirely possible that in-state interests frequently commandeer the process to derail the applications of out-of-state firms, but whether this outcome actually obtains cannot be resolved without examining the functioning of the statute in practice. Similarly, it may be that the Commissioner, although charged with considering a variety of factors, focuses exclusively on protecting existing businesses. See Walgreen Co. v. Rullan, 405 F.3d 50, 55 (1st Cir. 2005) ("[T]he Act discriminates against interstate commerce by permitting the Secretary to block a new pharmacy from locating in its desired location simply because of the adverse competitive effects that the new pharmacy will have on existing pharmacies."). Whether this actually occurs, however, cannot be ascertained in the absence of proper fact-finding.

Thus, determining whether Virginia's certificate-of-need law discriminates in either purpose or effect necessarily requires looking behind the statutory text to the actual operation of the law. This conclusion is confirmed by a host of precedents which have repeatedly emphasized the factual nature of the dormant Commerce Clause inquiry. The Supreme Court has observed, for instance, that "when considering the purpose of a challenged statute, [courts are] not bound by [t]he name, description or characterization given it by the legislature or

15

the courts of the State, but will determine for [themselves] the practical impact of the law." Hughes, 441 U.S. at 336 (internal quotation marks omitted). In this respect, the Court has consciously "eschewed formalism for a sensitive, case-by-case analysis of purposes and effects." West Lynn Creamery, Inc. v. Healy, 512 U.S. 186, 201 (1994).

The fact-intensive quality of the substantive inquiry assumes heightened importance when considered in light of the procedural posture of the instant dispute. "To survive a motion to dismiss, a complaint must [merely] contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Rule 12(b)(6) "does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." Neitzke v. Williams, 490 U.S. 319, 327 (1989). Here, appellants' claims of discrimination are sufficient "to raise [their] right to relief above the speculative level." Twombly, 550 U.S. at 555. They therefore satisfy the standard articulated in the above precedents. The district court gave a serious claim the back of its hand. This was error.

## C.

Even if Virginia's certificate-of-need requirement discriminates neither in purpose nor in effect, it may still be

16

unconstitutional under Pike v. Bruce Church, Inc., 397 U.S. 137 (1970), if it places an "undue burden" on interstate commerce. Yamaha, 401 F.3d at 567. "Where [a] statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." Pike, 397 U.S. at 142.

Unlike the more exacting standard of review employed in the context of discriminatory statutes, "[a] 'less strict scrutiny' applies under the undue burden tier." Yamaha, 401 F.3d at 567 (quoting Wyoming, 502 U.S. at 455 n.12). The putative benefits of a challenged law are evaluated under the rational basis test, id. at 569, though "speculative" benefits will not pass muster, Medigen of Ky., Inc. v. Pub. Serv. Comm'n, 985 F.2d 164, 167 (4th Cir. 1993). "The Pike test requires closer examination, however, when a court assesses a statute's burdens, especially when the burdens fall predominantly on out-of-state interests." Yamaha, 401 F.3d at 569. The test is therefore deferential but not toothless. See Davis, 553 U.S. at 339.

Appellants contend that Virginia's certificate-of-need program "does not actually achieve any legitimate local benefits." Compl. ¶ 208. To substantiate this claim, appellants cite a joint report issued by the Department of Justice and the

17

Federal Trade Commission concluding that certificate "programs are not successful in containing health care costs, and . . . pose serious anticompetitive risks that usually outweigh their purported economic benefits." Id. ¶ 99. Appellants also allege that the Virginia program substantially burdens the interstate market for both medical devices and services. Id. ¶¶ 194-99, 202.

Appellants' contentions find some support in the case law. For example, with regard to putative local benefits, the Medigen court invalidated a certificate-of-need program because "[r]estricting market entry" not only fails to expand service availability, but also "does nothing to [e]nsure that services are provided at reasonable prices." 985 F.2d at 167. Furthermore, with respect to burdens on interstate commerce, Virginia's certificate program may be "uniquely anti-competitive even as [certificate-of-need] laws go." Yamaha, 401 F.3d at 571. Apart from Virginia, only Connecticut and Michigan are said to have similarly onerous certificate requirements for low-value devices like CT and MRI scanners. Br. for Curvebeam, LLC as Amicus Curiae at 23. Finally, this court has recognized that when the burdens of a challenged law fall primarily on out-of-state economic interests -- as appellants allege is the case with respect to Virginia's statute -- the state's political

18

process cannot be relied upon to rectify legislative abuse. Yamaha, 401 F.3d at 573.

The Pike inquiry, like the discrimination test, is fact-bound. "If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities." Pike, 397 U.S. at 142. We shall not attempt to forecast what further investigation may demonstrate. The fact-intensive character of this inquiry, however, counsels against a premature dismissal. As noted above, in order to survive a motion to dismiss, plaintiffs' "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555. In the instant case, appellants have succeeded in "nudg[ing] their claims across the line from conceivable to plausible." Id. at 570. This particular challenge too presents issues of fact that cannot be properly resolved on a motion to dismiss. The district court therefore erred in dismissing appellants' Pike claim.

D.

On remand, the factual development of the dormant Commerce Clause claims should focus primarily on the discriminatory

19

effects test. In particular, the proceedings must investigate the differential burdens imposed on out-of-state and in-state firms subject to the certificate-of-need process. The fulcrum of this inquiry will be whether the certificate requirement erects a special barrier to market entry by non-domestic entities. As noted, the district court should not confine its focus to the effect on appellants alone, but should instead survey the burden imposed on interstate commerce generally.

The discriminatory effects test represents the superior framework of analysis for two reasons. First, this standard, although fact-intensive, has the virtue of providing a clearer measure by which to gauge the challenged statute's validity. The Pike test is often too soggy to properly cabin the judicial inquiry or effectively prevent the district court from assuming a super-legislative role. See, e.g., Davis, 553 U.S. at 353 (declining to apply Pike because "the Judicial Branch is not institutionally suited to draw reliable conclusions of the kind that would be necessary for [plaintiffs] to satisfy a Pike burden in this particular case"). Second, the factual material relevant to the Pike standard largely overlaps with evidence germane to the discrimination test. In both inquiries, the effect of the challenged statute on out-of-state firms constitutes the principal focus. Discovery on the issue of

discrimination should therefore substantially suffice with respect to Pike, as well.

Although the precise effects of the certificate program can only be uncovered via fact-finding, further inquiry is likely to confirm that the requirement produces one of three possible outcomes. First, the district court may discover that the certificate program has significant, deleterious effects on interstate commerce. The bureaucratic red tape foisted upon businesses by the program may well be so cumbersome that, as a functional matter, it imposes a major burden on interstate commerce and discourages out-of-state firms from offering important medical services in Virginia.

Second, it seems less likely, though conceivable, that the requirement produces the opposite effect and actually stimulates interstate commerce. In this scenario, firms are encouraged to enter the market because the certificate program ensures that they will have time to build patient goodwill, establish the necessary business and referral relationships, and generally acquire a market foothold before being economically submerged. In essence, the certificate requirement theoretically grants out-of-state firms a limited safe harbor to recoup the sizeable capital investment that the establishment of a medical facility requires.

Finally, the certificate program's effect on interstate commerce may be entirely neutral, or at least sufficiently insubstantial to avoid implicating the dormant Commerce Clause. The point is: we do not know. It is impossible to ascertain which of these potential outcomes actually obtains without examining the practical operation of the statute and the actual, concrete effects it has on out-of-state firms seeking to enter the Virginia market.

## III.

Appellants also assert a battery of claims under the Fourteenth Amendment. Specifically, they allege that Virginia's certificate-of-need requirement violates the Equal Protection, Due Process, and Privileges or Immunities Clauses. Unlike the Commerce Clause, the Fourteenth Amendment is not primarily focused on commerce and economic discrimination against out-of-state interests, and its general provisions provide correspondingly less warrant for close judicial supervision. For the reasons that follow, we affirm the district court's dismissal of each of these claims.

## A.

First, appellants argue that the certificate requirement violates the Equal Protection Clause of the Fourteenth Amendment. This particular claim centers on the statute's

22

treatment of nuclear cardiac imaging, which is exempted from the certificate-of-need requirement. Compl. ¶ 110. Appellants contend that nuclear cardiac imaging is "similarly situated to other types . . . of medical imaging," id. ¶ 111, and that the differential treatment of the two is irrational and therefore unconstitutional. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).

Non-suspect classifications -- such as the one at issue here -- are "accorded a strong presumption of validity," Heller v. Doe, 509 U.S. 312, 319 (1993), and must be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis" for the distinction, FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 313 (1993). This deferential standard is informed by the principle that "equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." Id.

Here, Virginia has articulated sufficient justifications for the nuclear cardiac imaging exemption to survive rational basis scrutiny. State legislators could reasonably have concluded, for instance, that nuclear cardiac imaging services are provided in a different market than other imaging services, and thus less susceptible to the dangers of excess capacity or geographical misallocation. Appellees' Br. at 54; see also 12 Va. Admin. Code § 5-230-30. Moreover, appellants have provided

no general context or perspective to support their equal protection challenge, and we are disinclined to pick apart the Virginia statute specialty by specialty or to unravel a complex medical regulatory scheme strand by strand. We thus affirm the district court's dismissal of appellants' equal protection claim.

B.

Second, appellants argue that the certificate requirement violates the Fourteenth Amendment's Due Process Clause. Appellants' specific claim, which seeks to import further substantive rights into a clause whose focus is procedural, rests on the contention that the certificate program irrationally burdens appellants' right to earn a living and fails to advance any state purpose other than bald economic protectionism. Compl. ¶¶ 221-25.

The certificate-of-need program does not infringe any fundamental or enumerated right and is therefore subject to rational basis review under the Due Process Clause. See Washington v. Glucksberg, 521 U.S. 702, 719-20 (1997). Rational basis scrutiny in the due process context -- as in the equal protection context -- is quite deferential. See Star Scientific Inc. v. Beales, 278 F.3d 339, 348-49 (4th Cir. 2002).

Here, appellants have failed to plausibly rebut the state's asserted justifications for the certificate-of-need program. The

24

state, both in its brief and its implementing regulations, articulates a variety of legitimate purposes served by the statute, including ensuring geographically convenient access to healthcare for Virginia residents at a reasonable cost. Appellees' Br. at 49-50. Appellants' cursory, unsubstantiated assertion that the statute fails to advance this purpose or any other is insufficient to merit further factual inquiry. As is the case with their equal protection claim, appellants have failed to state a plausible due process entitlement to relief. Iqbal, 556 U.S. at 678. The district court's dismissal of this count is therefore affirmed.

## C.

Finally, appellants contend that the certificate-of-need program contravenes the "right to earn an honest living" embodied in the Fourteenth Amendment's Privileges or Immunities Clause, which provides that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." They concede, however, that this particular claim is foreclosed by the Supreme Court's decision in the Slaughter-House Cases, 83 U.S. 36, 79-80 (1872), which confined the reach of that clause to a set of national rights that does not include the right to pursue a particular occupation. This court lacks the authority to disturb an unimpeached precedent issued by a superior tribunal. State Oil

25

Co. v. Khan, 522 U.S. 3, 20 (1997). This is especially the case where recognition of an unenumerated substantive right would open the door to a host of textually dubious challenges to state economic regulation of every sort. The district court's dismissal of appellants' privileges or immunities claim is therefore affirmed.

IV.

In sum, appellants' Commerce Clause challenges require closer scrutiny and further proceedings before the district court, but the Fourteenth Amendment claims were properly dismissed. We thus affirm in part, reverse in part, and remand this case for further proceedings in accordance with this decision.

<u>AFFIRMED IN PART,</u>
<u>REVERSED IN PART,</u>
<u>AND REMANDED</u>

WILSON, District Judge, concurring:

Plaintiffs would like to render medical services in Virginia with equipment they cannot utilize without first proving to the Commonwealth that the competition they bring with them will not harm established local health care providers. In my opinion, little distinguishes such a regulatory system from one that offends the dormant commerce clause by isolating local interests from the national economy.

A handful of states initially developed certificate of need regulations in the 1960s. Congress injected the certificate of need regimen more broadly into national health care planning when it enacted the National Health Planning and Resource Development Act of 1974 (the "NHPRDA"), Pub. L. 93-641, 88 Stat. 2225, §§ 1-3, to control escalating health care costs and the widely diverging availability of health care services. The NHPRDA had the incidental effect of protecting the states' certificate of need regimens from dormant commerce clause scrutiny. But twelve years later, Congress repealed the NHPRDA, Pub. L. 99-60, 100 Stat. 3743 (1986), after its failures had become well past obvious. The NHPRDA's repeal removed the certificate of need's shield from dormant commerce clause scrutiny. Yet, twenty-seven years later, in Virginia, and throughout much of the country, state certificate of need regimens continue to grow and now regulate an enormous segment

27

of the national economy. The Virginia regimen explicitly regulates its share of that economy by using the certificate of need to "discourage[] the proliferation of services that would undermine the ability of essential community providers to maintain their financial viability." 12 Va. Admin. Code § 5-230-30 (2013). Stripped of its linguistic pretense, the Commonwealth's purpose is to protect established "community providers" (i.e., established in-state interests) from the effects of competition. Though this purpose or goal may be legitimate, I find little difference in the means it employs to accomplish that goal -- the limitation of competition -- from illegitimate efforts to isolate local economic interests from the national economy. Wyoming v. Oklahoma, 502 U.S. 437, 456-57 (1992) (noting the court has "often examined a 'presumably legitimate goal,' only to find that the State attempted to achieve it by 'the illegitimate means of isolating the State from the national economy'"). But even apart from its stated purpose, in my view, a state regulatory system that chooses to limit competition as its means to promote the delivery of health care will still likely, if not inevitably, entangle itself with the dormant commerce clause.