302 Ga. 349
FINAL COPY

S17A1317, S17X1318. WOMEN'S SURGICAL CENTER, LLC et al. v. BERRY et al.; and vice versa.

MELTON, Presiding Justice.

Women's Surgical Center, LLC d/b/a Georgia Advanced Surgery Center for Women (hereinafter referred to as the "Center") provides outpatient surgery services in Cartersville, Georgia. The Center has immediate plans to add a second operating room to its premises in order to create opportunities to form contracts with additional surgeons who could then use the Center in connection with their medical practices. However, any such change to the Center could only be legally accomplished if the Center sought and was granted a certificate of need ("CON")[1] by the Georgia Department of Community Health (the "Department"). Specifically, pursuant to OCGA § 31-6-40 (a) (7) (C):

---

[1] See OCGA §§ 31-6-1 through 31-6-70; Ga. Comp. R. and Regs., rr. 111-2-2-.01 through .42; Ga. Comp. R. and Regs., rr. 274-1-.01 through .20. The Center sought and was denied a CON in 2014, but the denial of the CON is not what is at issue in the current appeal.

On and after July 1, 2008, any new institutional health service shall be required to obtain a certificate of need pursuant to this chapter. New institutional health services include . . . [c]linical health services which are offered in or through a diagnostic, treatment, or rehabilitation center which were not offered on a regular basis in or through that center within the 12 month period prior to the time such services would be offered, but only if the clinical health services [involve] . . . [s]urgery in an operating room environment, including but not limited to ambulatory surgery.

Because the Center believed that it should not be subject to the CON requirements, on June 30, 2015, the Center filed an action for declaratory and injunctive relief against the Department[2] in an effort to have Georgia's applicable CON law and the regulations authorizing it declared unconstitutional.[3] On August 20, 2015, the Department moved to dismiss the complaint, arguing, among other things, that the trial court lacked jurisdiction

---

[2] The Center originally filed its action against the previous Commissioner of the Department, Clyde Reese III, and the Health Planning Director of the Department, Rachel King, in their individual and official capacities. Since that time, Frank Berry has replaced Reese as Commissioner, and the style of this case has been changed to reflect that Berry, rather than Reese, is the current Commissioner. For ease of reference, all of the defendants shall simply be referred to collectively as the "Department."

[3] While the Center initially appeared to be attempting to challenge the entire CON law statutory scheme in the trial court and in its brief to this Court, the Center conceded at oral argument before this Court that it is only seeking to challenge OCGA § 31-6-40 (a) (7) (C).

over the case because the Center failed to exhaust its administrative remedies before filing its lawsuit. The trial court denied the motion to dismiss on February 10, 2016. On September 16, 2016 both the Center and the Department filed motions for summary judgment with regard to the Center's constitutional claims. In an October 31, 2016 order, the trial court rejected all of the Center's constitutional challenges and granted summary judgment to the Department. In Case No. S17A1317, the Center appeals from this ruling, and in Case No. S17X1318, the Department appeals from the denial of its August 2015 motion to dismiss. For the reasons that follow, we affirm in both cases.

*Case No. S17X1318*[4]

1. The Department argues that the trial court erred in failing to dismiss the Center's declaratory action because the Center failed to exhaust its administrative remedies before filing its declaratory action and did not have standing to bring such an action at this point. We disagree.

> An action for declaratory judgment is available to test the validity of an alleged unconstitutional law, in order that a person desiring to practice his vocation may know whether he may proceed in

---

[4] We are addressing the cross-appeal first, because, if the trial court had erred in denying the Department's motion to dismiss, there would be no need for us to reach the constitutional issues.

3

disregard of the requirements of the law, or whether he must refuse to [advance his interests that are] regulated by the law until he can comply with its provisions.

Jenkins v. Manry, 216 Ga. 538, 540-541 (118 SE2d 91) (1961). While an entity may not seek a declaratory judgment where no "actual controversy" exists between the relevant parties (see OCGA § 9-4-2 (a)), a party has standing to pursue a declaratory action where the threat of an injury in fact is "actual and imminent, not conjectural or hypothetical." Summers v. Earth Island Inst., 555 U. S. 488, 493 (II) (129 SCt 1142, 173 LE2d 1) (2009). See also GeorgiaCarry.Org, Inc. v. Atlanta Botanical Garden, Inc., 299 Ga. 26 (785 SE2d 874) (2016).

Here, it is undisputed that the Center's imminent plans to add a second operating room would be subject to the approval of the Department under the CON laws. In fact, the Center had already been denied a CON for this same proposed expansion in 2014.[5] However, even without filing a new application for a CON, the Center is still currently "faced with the prospect of either punishment if [it expands its facilities] without a [CON] or enduring much expense and effort to obtain the [new CON]." (Citation and punctuation

[5] The denial of that CON is not what is at issue in the current appeal.

4

omitted.) <u>Bruner v. Zawacki</u>, 997 FSupp.2d 691, 696 (III) (A) (E.D. Ky. 2014). Under such circumstances, we find that the Center is confronted with an injury in fact that is "actual and imminent, not conjectural or hypothetical" (<u>Summers</u>, supra), such that it has standing to pursue its declaratory action here. See <u>Bruner</u>, supra.

Because the Center has standing to pursue, and is in fact pursuing, a direct facial constitutional challenge to OCGA § 31-6-40 (a) (7) (C) (see Division 2, infra), the Center was not required to exhaust its administrative remedies before filing its declaratory action. Unlike in situations where a constitutional claim is raised in the context of actual administrative proceedings or where the constitutional challenge is as applied (see, e.g., <u>Dept. of Public Safety v. Foreman</u>, 130 Ga. App. 71 (202 SE2d 196) (1973)), "[t]here is . . . no exhaustion requirement when, as in the present case, the [plaintiff] challenges the constitutionality of [a statute] on its face." (Citation and punctuation omitted.) <u>King v. City of Bainbridge</u>, 272 Ga. 427, 428 (2) (531 SE2d 350) (2000).

The trial court did not err in denying the Department's motion to dismiss.

*Case No. S17A1317*

2. The Center contends that OCGA § 31-6-40 (a) (7) (C) is unconstitutional on its face because the statute (a) violates the Anti-Competitive Contracts Clause of the Georgia Constitution (see Ga. Const. of 1983 Art. III, Sec. VI, Par. V (c) (l)), and (b) violates the Due Process Clauses of the Georgia and United States Constitutions (see U. S. Const. Amend. 14 and Ga. Const. of 1983 Art. I, Sec. I, Par. I).[6] As explained more fully below, both of these contentions are without merit.

In reviewing the Center's facial challenges to OCGA § 31-6-40 (a) (7) (C),

> we recognize at the outset that all presumptions are in favor of the constitutionality of an Act of the legislature and that before an Act of the legislature can be declared unconstitutional, the conflict between it and the fundamental law must be clear and palpable and this Court must be clearly satisfied of its unconstitutionality.

[6] The Center also raised an argument below with respect to the Privileges and Immunities Clause of the Fourteenth Amendment and of Ga. Const. of 1983 Art. I, Sec. I, Par. VII. However, in footnote 3 of its appellate brief, the Center "concede[s] that [its] cause of action under the Privileges or Immunities Clause of the Fourteenth Amendment is foreclosed by the Slaughter-House Cases, 83 U. S. 36 [(21 LE 394)] (1872)." Furthermore, with respect to Georgia's Privileges and Immunities Clause, the Center only mentions the Clause in one sentence in footnote 9 of its brief without developing any substantive argument on the issue. Accordingly, we find the purported claim relating to Georgia's Privileges and Immunities Clause to have been abandoned on appeal. See Ga. Supreme Court Rule 22.

Moreover, because statutes are presumed to be constitutional until the contrary appears, the burden is on the party alleging a statute to be unconstitutional to prove it.

(Citation and punctuation omitted.) JIG Real Estate, LLC v. Countrywide Home Loans, Inc., 289 Ga. 488, 490 (2) (712 SE2d 820) (2011). Additionally,

[a] facial challenge "is, of course, the most difficult challenge to mount successfully," United States v. Salerno, 481 U. S. 739, 745 (II) (107 SCt 2095, 95 LE2d 697) (1987), because it requires one to establish "that no set of circumstances exists under which the statute would be valid, i.e., that the law is unconstitutional in all of its applications, or at least that the statute lacks a plainly legitimate sweep." Blevins v. Dade County Bd. of Tax Assessors, 288 Ga. 113, 118 (3) (702 SE2d 145) (2010) (citation and punctuation omitted).

(Punctuation omitted.) Bello v. State, 300 Ga. 682, 685-686 (1) (797 SE2d 882) (2017).

With these principles in mind, we address each argument in turn:

(a) *Anti-Competitive Contracts Clause*: The Center asserts that OCGA § 31-6-40 (a) (7) (C) violates the Anti-Competitive Contracts Clause of the Georgia Constitution because the Center is not allowed to effectively compete in the healthcare market by expanding its facilities if the Center does not first obtain the approval of the Department to receive a CON. However, the Center's argument shows a fundamental misunderstanding of the scope of the Anti-

7

Competitive Contracts Clause. That Clause provides:

> The General Assembly shall not have the power to *authorize any contract or agreement* which may have the effect of or which is intended to have the effect of encouraging a monopoly, which is hereby declared to be unlawful and void. Except as otherwise provided in subparagraph (c) (2) of this Paragraph [providing for judicial enforcement of contracts regulating competitive activities between certain entities], the General Assembly shall not have the power to *authorize any contract or agreement* which may have the effect of or which is intended to have the effect of defeating or lessening competition, which is hereby declared to be unlawful and void.

(Emphasis supplied.) Ga. Const. of 1983, Art. III, Sec. VI, Par. V (c) (1). As the text of this constitutional provision indicates, and as this Court has previously held, the Anti-Competitive Contracts Clause "is an embodiment of the common-law rule which prohibited contracts in general restraint of trade," and is "limited expressly to *contracts and agreements*." (Emphasis supplied.) Executive Town & Country Svcs. v. Young, 258 Ga. 860, 863 (2) (376 SE2d 190) (1989). See also Ga. Franchise Practices Comm. v. Massey-Ferguson, Inc., 244 Ga. 800, 801 (2) (262 SE2d 106) (1979) (striking down provisions of Franchise Practices Act that authorized franchise agreements that permitted "franchised dealers to restrict competition and create a monopoly in the retail sale of motor vehicles").

8

By its plain terms, OCGA § 31-6-40 (a) (7) (C) does not authorize monopolistic "contracts" relating to providers of new institutional health services. It only requires that all such providers obtain a CON before adding new services. While the CON requirement could have an impact on the expansion plans of certain providers within an existing market, this does not implicate the Anti-Competitive Contracts Clause of the Georgia Constitution in any way, as the requirement does not authorize contracts between service providers or anyone else that would encourage a monopoly. Because the Anti-Competitive Contracts Clause simply does not apply here, the Center's constitutional claim on this ground must fail. Young, supra, 258 Ga. at 863 (2).

(b) *Due Process*: The Center claims that OCGA § 31-6-40 (a) (7) (C) violates substantive due process under the Georgia Constitution and the Fourteenth Amendment of the United States Constitution because it restricts competition among healthcare providers by requiring them to seek a CON before adding new services. Because these substantive due process challenges do not involve a

> fundamental right or suspect class . . . we examine them under the lenient "rational basis" test. See State v. Nankervis, 295 Ga. 406, 409 (761 SE2d 1) (2014). . . . Under this test, a statute does not

violate due process in substance as long as it "bear[s] a rational relationship to a legitimate objective of the government." Id.

Barzey v. City of Cuthbert, 295 Ga. 641, 645 (4) (a) (763 SE2d 447) (2014). See also Quiller v. Bowman, 262 Ga. 769 (425 SE2d 641) (1993) (Where a due process challenge under the Georgia Constitution does not involve "a fundamental right, the rational basis test applies. Under this analysis, if the laws passed are seen to have a reasonable relation to a proper legislative purpose, and are neither arbitrary nor discriminatory, the requirements of due process are satisfied") (citations and punctuation omitted).

Pursuant to OCGA § 31-6-1, the purpose of the CON laws is

to ensure access to quality health care services and to ensure that health care services and facilities are developed in an orderly and economical manner and are made available to all citizens and that only those health care services found to be in the public interest shall be provided in this state. To achieve such public policy and purposes, it is essential that appropriate health planning activities be undertaken and implemented and that a system of mandatory review of new institutional health services be provided. Health care services and facilities should be provided in a manner that avoids unnecessary duplication of services, that is cost effective, that provides quality health care services, and that is compatible with the health care needs of the various areas and populations of the state.

This Court has previously found that "promoting the availability of quality health care services [is] certainly [a] legitimate legislative purpose[ ]." Gliemmo

10

v. Cousineau, 287 Ga. 7, 11 (694 SE2d 75) (2010). Furthermore, we agree with courts in other jurisdictions with similar CON laws to Georgia's that have concluded that CON programs serve the legitimate purpose of "ensuring geographically convenient access to healthcare for [state] residents at a reasonable cost." Colon Health Centers of America, LLC v. Hazel, 733 F3d 535, 548 (III) (B) (4th Cir. 2013); Madarang v. Bermudes, 889 F2d 251, 253 (II) (9th Cir. 1989). The government objectives with respect to Georgia's CON laws as stated in OCGA § 31-6-1 are indeed legitimate.

Furthermore, on the record before us, the Center has not shown that OCGA § 31-6-40 (a) (7) (C) does not bear a rational relationship to the legitimate government objectives outlined in OCGA § 31-6-1. By incorporating a review and approval process for the addition of new healthcare services in existing markets that might already have such services and those markets that may need such services, OCGA § 31-6-40 (a) (7) (C) potentially allows the Department to avoid the "unnecessary duplication of services," which can in turn make health care more "cost effective" and "compatible with the . . . needs of the various areas and populations of the state." OCGA § 31-6-1. The Center has not shown under the record that the requirements of OCGA § 31-6-40 (a)

11

(7) (C) are arbitrary or discriminatory, and the fact that the legislature could have potentially come up with a different statute with a theoretically more effective means of accomplishing the stated goals of OCGA § 31-6-1 is irrelevant. Advanced Disposal Svcs. Middle Georgia v. Deep South Sanitation, 296 Ga. 103, 107 (2), n. 5 (765 SE2d 364) (2014) ("[T]he Due Process Clause does not empower the judiciary to sit as a superlegislature to weigh the wisdom of legislation") (citation and punctuation omitted). OCGA § 31-6-40 (a) (7) (C) is the vehicle that was chosen, and the record before us does not show that this statute does not bear a rational relationship to the legitimate goals of government expressed in OCGA § 31-6-1.[7] Accordingly, the Center's due process challenges to OCGA § 31-6-40 (a) (7) (C) are without merit. See, e.g., Planned Parenthood of Greater Iowa, Inc. v. Atchison, 126 F3d 1042, 1048 (IV)

---

[7] In this regard, we must emphasize that this is a case about the General Assembly's ability to regulate healthcare. The record in this case makes quite clear that the market for healthcare is not normal; indeed, there are few (if any) other private sector markets so dominated by government regulation. Much of that regulation is federal in nature, which limits the General Assembly's range of legislative options on healthcare issues. And in Georgia, some state healthcare regulation is also the natural result of state constitutional mandates. See Ga. Const. of 1983, Art. III, Sec. VIII, Par. I ("Provision shall be made by law for the regulation of insurance."). Nothing in today's opinion should be understood to support sweeping economic regulation of this sort beyond this unique context.

12

(8th Cir. 1997) ("CON laws in general have been recognized as a valid means of furthering a legitimate state interest").[8]

Judgments affirmed. Hines, C. J., Benham, Hunstein, Nahmias, Blackwell, Peterson, JJ., and Judge Charles J. Bethel, concur. Boggs, J., concurs in judgment only as to Division 2 (b). Grant, J., disqualified.

---

[8] To the extent that the Center argues that OCGA § 31-6-40 (a) (7) violates due process pursuant to case law indicating that "a State legislature is without constitutional power to fix prices at which commodities may be sold, services rendered, or property used, unless the business or property involved is 'affected with a public interest'" (citation and punctuation omitted) Harris v. Duncan, 208 Ga. 561, 564 (67 SE2d 692) (1951), such arguments are misplaced. This Court held in Paramount Pictures Corp. v. Busbee, 250 Ga. 252, 256-257 (2) (297 SE2d 250) (1982), that "[t]he 'affected by a public interest' test . . . applies *only to price controls* enacted by the legislature." (Emphasis supplied.) The statute involved in this case is not a price control being implemented by the legislature to directly fix the prices at which health services may be rendered.

Decided October 16, 2017.

Certificate of need; constitutional question. Fulton Superior Court. Before Judge Bedford.

Lightmas & Delk, Glenn A. Delk; James M. Manley, Veronica Thorson, for appellant.

Christopher M. Carr, Attorney General, Isaac Byrd, Deputy Attorney General, Daniel S. Walsh, Senior Assistant Attorney General, Forrest G. Pearce, Monica A. Sullivan, Assistant Attorneys General, for appellees.

Strickland Brockington Lewis, Anne W. Lewis; Pacific Legal Foundation, Jeffrey W. McCoy; Parker, Hudson, Rainer & Dobbs, John H. Parker, Jr., J. Marbury Rainer; Heidari Power Law Group, Yasha Heidari, amici curiae.