306 Ga. 788
FINAL COPY

S19A0655.  POLO GOLF AND COUNTRY CLUB HOMEOWNERS
ASSOCIATION, INC. v. CUNARD et al.

BENHAM, Justice.

Appellant Polo Golf and Country Club Homeowners Association, Inc. ("PGHOA") filed a complaint for declaratory and injunctive relief against appellees John Cunard, Director of Forsyth County's Department of Engineering, and Benny Dempsey, Stormwater Division Manager of Forsyth County's Department of Engineering (the "stormwater executives"), in their individual capacities to determine their constitutional authority to prospectively enforce an addendum to Forsyth County's stormwater ordinance.[1]  The stormwater executives filed a motion for judgment on the pleadings, and all parties filed motions for summary judgment.  The trial court granted the motion for judgment on the pleadings in favor of the stormwater executives, denying the

_____

[1] See Chapter 34, Article V of the Forsyth County Code of Ordinances.

motions for summary judgment as moot.

According to the complaint filed in this matter and considered by the trial court, PGHOA is a nonprofit corporation which oversees a housing subdivision in unincorporated Forsyth County called "the Polo Fields." The stormwater mechanisms in the subdivision including the Wellington Dam, which shores up a body of water known as the Wellington Lake, are failing due to age. The failure of these various stormwater mechanisms has caused flooding, sinkholes, and other property damage for some individual homeowners. This situation has resulted in almost a decade's worth of litigation, including a previous decision in this Court concerning similar underlying facts and some of the same parties. See *Polo Golf and Country Club Homeowners' Assoc., Inc. v. Rymer*, 294 Ga. 489 (754 SE2d 42) (2014) ("*Polo Golf I*"). In *Polo Golf I*, John and Diane Rymer, who were individual homeowners of the Polo Fields, PGHOA, and Forsyth County disagreed as to who was responsible for repairing failing stormwater mechanisms affecting the Rymers' property pursuant to the 2004 version of Section 4.2.2 set forth in

2

Forsyth County's Addendum to the Georgia Stormwater Management Design Manual.[2]  The 2004 version of Section 4.2.2 provided in pertinent part as follows:

> When a subdivision or industrial/commercial park has a legally created property or homeowners association, the association will be responsible for maintenance of all drainage easements and all stormwater facilities within the entire development.  . . . Forsyth County Department of Engineering, Stormwater Division personnel may perform periodic inspections of existing and new private stormwater management facilities to determine whether they are maintained properly. Deficiencies will be noted to the association in writing. It shall be the responsibility of the association to repair deficiencies in a timely manner.

In *Polo Golf I*, PGHOA contended the 2004 version of Section 4.2.2 was unconstitutional; however, this Court did not reach the constitutional issue in *Polo Golf I* because we concluded that the provision applied to new developments and redevelopments, but not to already-existing developments such as the Polo Fields.  294 Ga. at 495.

---

[2]See Section 34-191 of Forsyth County's Code of Ordinances.  See also https://www.forsythco.com/Departments-Offices/Engineering/Stormwater-Division/Stormwater-Management (last accessed September 10, 2019).

In January 2014, while this Court's decision in *Polo Golf I* was still pending, Forsyth County enacted a new version of Section 4.2.2 which now states in pertinent part as follows:

> When any subdivision or industrial/commercial park, **whether new or existing**, has a legally created property or homeowners association, the association will be responsible for maintenance of all drainage easements and all stormwater facilities within the entire development.

(Emphasis supplied.) It is this 2014 version of Section 4.2.2 that is at issue in this appeal.

PGHOA argued below and continues to argue on appeal that the 2014 version of Section 4.2.2 is unconstitutional because: (1) it impairs PGHOA's contractual obligations with homeowners inasmuch as the 2014 version of Section 4.2.2 makes PGHOA responsible for the maintenance of all stormwater mechanisms within the subdivision and (2) it is retrospective in nature. According to PGHOA's complaint, the 2014 version of Section 4.2.2 precludes it from enforcing the Declaration of Covenants,

4

Restrictions and Easements (the "Declaration"),[3] which requires individual homeowners of the Polo Fields to maintain such drainage and stormwater mechanisms. The trial court rejected these constitutional challenges to the 2014 version of Section 4.2.2. Because it determined that the 2014 version of Section 4.2.2 was constitutional, the trial court concluded the stormwater executives were immune from suit based on the doctrine of sovereign immunity and granted the stormwater executives' motion for judgment on the pleadings. This appeal followed.

1. *Preliminary Matters*

a. The trial court ruled that granting the motion for judgment on the pleadings was justified in part because it concluded sovereign immunity applied after it first determined PGHOA's private contract-based constitutional claims were not viable. The trial court's analysis was incorrect. Sovereign immunity is a threshold determination that must be ruled upon *prior* to the case moving

---

[3] The Declaration was adopted and recorded in 1987.

forward on the more substantive matters. See *McConnell v. Dept. of Labor*, 302 Ga. 18, 19 (805 SE2d 79) (2017) ("[T]he applicability of sovereign immunity is a threshold determination, and, if it does apply, a court lacks jurisdiction over the case and, concomitantly, lacks authority to decide the merits of a claim that is barred."). Accordingly, the trial court erred when it did not make a ruling on whether sovereign immunity applied *before* it considered more substantive matters.

The trial court's finding that sovereign immunity barred PGHOA's suit was also erroneous. As we stated in *Lathrop v. Deal*, "the doctrine of sovereign immunity usually poses no bar to suits [for prospective relief] in which state officers are sued in their individual capacities for official acts that are alleged to be unconstitutional." 301 Ga. 408 (III) (C) (801 SE2d 867) (2017). Here, PGHOA sued the stormwater executives in their individual capacities for prospective relief from acts which PGHOA alleged were unconstitutional. Accordingly, the suit was not barred by sovereign immunity. Id. Therefore, the portion of the trial court's judgment dismissing the

6

case on sovereign immunity grounds is reversed.

b. The stormwater executives' argument that PGHOA lacks standing is incorrect. The stormwater executives allege the dismissal of the suit was authorized because PGHOA lacks standing, inasmuch as the stormwater executives have not taken any enforcement actions against PGHOA for the failing stormwater mechanisms at the Polo Fields. However, "a party has standing to pursue a declaratory action where the threat of an injury in fact is 'actual and imminent, not conjectural or hypothetical.' [Cit.]." *Women's Surgical Center, LLC v. Berry*, 302 Ga. 349 (1) (806 SE2d 606) (2017). Forsyth County enacted the 2014 version of Section 4.2.2 while this Court's decision in *Polo Golf I* was pending. In *Polo Golf I*, Forsyth County, through its counsel — who also represents the stormwater executives in this case — filed a motion for reconsideration in which it stated its intent to enforce the 2014 version of 4.2.2 against PGHOA. During the oral argument in this appeal, counsel for the stormwater executives admitted that the stormwater executives would be the county personnel who would

7

enforce Section 4.2.2 against PGHOA. Thus the enforcement of Section 4.2.2 is imminent in these circumstances and not merely conjectural or hypothetical, meaning that PGHOA does not lack standing. See id. at 351.

2. *Motion for Judgment on the Pleadings*

Our review of a trial court's decision on a motion for judgment on the pleadings is de novo. See *Reliance Equities, LLC v. Lanier 5, LLC*, 299 Ga. 891 (1) (792 SE2d 680) (2016). When considering such motions,

> all well-pleaded material allegations of the opposing party's pleading are to be taken as true, and all allegations of the moving party which have been denied are taken as false. A motion for judgment on the pleadings should be granted only if the moving party is clearly entitled to judgment.

(Citations and punctuation omitted.) *Sherman v. Fulton County Bd. of Assessors*, 288 Ga. 88, 90 (701 SE2d 472) (2010). See also *Trop, Inc. v. City of Brookhaven*, 296 Ga. 85 (1) (764 SE2d 398) (2014). For the reasons set forth below, we affirm the trial court's grant of the motion for judgment on the pleadings based on the constitutional

8

issues concerning PGHOA's contract rights.

a. The trial court concluded that the 2014 version of Section 4.2.2 does not violate the federal constitution's Contracts Clause.[4] To determine whether a law unconstitutionally impairs a contractual relationship under the Contracts Clause, a court considers, at the first level of its inquiry, the following: whether a contractual relationship exists, whether the change in law impairs the contractual relationship, and whether the impairment is substantial. See *Taylor v. City of Gadsden*, 767 F3d 1124 (III) (B) (11th Cir. 2014) (citing *Allied Structural Steel Co. v. Spannaus*, 438 U. S. 234, 244 (98 SCt 2716, 57 LE2d 727) (1978) and *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (112 SCt 1105, 117 LE2d 328) (1992)). See also *Sveen v. Melin*, __ U. S. __ (II) (138 SCt 1815, 201 LE2d 180) (2018) (discussing the test for a violation of the Contracts Clause). Even if a law causes a substantial impairment to a

---

[4] The federal constitution provides in pertinent part: "No State shall . . . pass any . . . [l]aw impairing the [o]bligation of [c]ontracts . . . ." U. S. Const. Art. I, Sec. X.

contractual relationship, a second level of inquiry requires a trial court to consider whether the law nonetheless is a reasonable way to advance a significant and legitimate public purpose. See *Sveen*, 138 SCt at 1822.

The 2014 version of Section 4.2.2 states that homeowner associations ("HOAs") are responsible for maintaining all drainage easements and stormwater facilities in their developments. The 2014 version of Section 4.2.2 further provides that the county, in certain circumstances, may direct HOAs to take certain actions (e.g., applying larvicides or making repairs) to comply with their overall responsibility to maintain such systems or otherwise be penalized for noncompliance.[5] On its face, the 2014 version of Section 4.2.2 does not mention or prescribe the means by which an HOA must meet its responsibility to maintain drainage easements or stormwater facilities. It also does not expressly or implicitly prohibit an HOA from using its contractual relationships with

---

[5] See also Section 34-195 of Forsyth County's Code of Ordinances.

homeowners to effect compliance therewith.

In the complaint, PGHOA concedes it can exercise at least one of its contractual remedies under the Declaration (i.e., abatement/self-help) against homeowners to meet its obligations to the county. Thus, the 2014 version of Section 4.2.2 does not wholly preclude PGHOA from using the Declaration to effect action by homeowners in order to comply with the county's stormwater maintenance requirements. As to the other contractual remedies available under the Declaration,[6] PGHOA has only identified impediments to its exercise of these remedies, such as the vagaries of dealing with time constraints, the bureaucracy of its administrative board, and difficult homeowners. PGHOA has not shown any actual inability to exercise its contractual remedies because of the county's stormwater ordinance. Accordingly, there is no violation of the Contracts Clause.

---

[6] In its complaint, PGHOA alleges that, when homeowners fail to comply with their obligations under the Declaration, it may remedy such noncompliance by fining homeowners, suspending homeowners' membership privileges, and/or suing homeowners.

11

b. PGHOA alleges the 2014 version of Section 4.2.2 violates Georgia's impairment clause because it impairs an obligation of contract and is retrospective in nature, thereby violating Georgia's prohibition against retroactive laws. See Ga. Const. of 1983, Art. I, Sec. I, Par. X ("No . . . retroactive law, or laws impairing the obligation of contract . . . shall be passed."). Establishing a violation of Georgia's impairment clause, under either a theory of contractual impairment or a theory of retroactivity, requires the complaining party to show that a vested right is at stake. See *Deal v. Coleman*, 294 Ga. 170 (2) (a) (751 SE2d 337) (2013) ("with respect to the retroactive application of statutes, we conclude that 'vested rights' must be private rights");[7] *Unified Government of Athens-Clarke County v. McCrary*, 280 Ga. 901, 904 (635 SE2d 150) (2006) (no impairment of employment contract where retirees did not have a "vested right" in the precise type of healthcare delivery system used

---

[7] This Court has explained that "[p]rivate rights may become vested in particular persons, and when they are vested, [the Georgia] Constitution does not permit those rights to be denied to those persons by subsequent legislation." Id. at 181.

during employment); *Siegrest v. Iwuagwa*, 229 Ga. App. 508 (3) (c) (494 SE2d 180) (1998) (chiropractor had no vested right to perform massages as part of treatment and so statute that excluded massages from chiropractor services did not impair any contractual right). To determine whether there has been a violation of Georgia's impairment clause, courts in this state will consider whether a vested right exists and then whether that vested right has been "injuriously affected" by the law in question. See *Jackson County Bd. of Health v. Fugett Constr., Inc.*, 270 Ga. 667 (2) (514 SE2d 28) (1999).

Here, PGHOA has failed to fully articulate a vested right[8] or

---

[8] This Court has explained:

> To be vested, in its accurate legal sense, a right must be complete and consummated, and one of which the person to whom it belongs cannot be divested without his consent. A divestible right is never, in a strict sense, a vested right. It has also been said that the term vested rights, which cannot be interfered with by retrospective laws, means interests which it is proper for the state to recognize and protect and of which the individual cannot be deprived arbitrarily without injustice.

(Citation and punctuation omitted). *Hayes v. Howell*, 251 Ga. 580 (2) (b) (308 SE2d 170 (1983).

show that any alleged vested right has been injuriously affected by the 2014 version of Section 4.2.2. In its briefing on appeal, PGHOA contends all the rights in the Declaration are vested rights and, without citing any authority, contends that "maintenance obligations" are "fully vested contract rights." As discussed in Division 2 (a), supra, the 2014 version of Section 4.2.2 does not prohibit PGHOA from exercising all of its remedies for addressing homeowners' noncompliance with their stormwater maintenance obligations under the Declaration. In the absence of a vested right, or an injury thereto, there is no violation of the Georgia Constitution's impairment clause.

Inasmuch as the 2014 version of Section 4.2.2 is not unconstitutional under the Contracts Clause or Georgia's impairment clause, the trial court's decision to grant the stormwater executives' motion for judgment on the pleadings must be affirmed as to those grounds.

3. The trial court did not address PGHOA's various other claims, including trespass and involuntary servitude. Inasmuch as

those issues were not ruled upon, we will not address them. See

*Messaadi v. Messaadi*, 282 Ga. 126 (3) (646 SE2d 230) (2007);

*Ballard v. Waites*, 194 Ga. 427 (5) (21 SE2d 848) (1942). Therefore,

the case is remanded for the trial court to address those claims in

order to fully resolve the stormwater executives' motion for

judgment on the pleadings.

*Judgment affirmed in part and reversed in part, and case*

*remanded. All the Justices concur.*

DECIDED SEPTEMBER 23, 2019.
County ordinance; constitutional question. Forsyth Superior Court. Before Judge Bagley.

*Lueder, Larkin & Hunter, John T. Lueder*, for appellant.

*Jarrard & Davis, Kenneth E. Jarrard, Joseph P. Mitchell*, for appellees.