**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**July 22, 2021**

# In the Court of Appeals of Georgia

A21A0734. SONS OF CONFEDERATE VETERANS et al. v. NEWTON COUNTY BOARD OF COMMISSIONERS.

A21A0735. HUMPHRIES v. NEWTON COUNTY BOARD OF COMMISSIONERS.

A21A0988. SONS OF CONFEDERATE VETERANS et al. v. HENRY COUNTY BOARD OF COMMISSIONERS.

DILLARD, Presiding Judge.

In this consolidated appeal, we are asked to consider questions of standing and sovereign immunity under OCGA § 50-3-1 in relation to decisions made by the Newton County Board of Commissioners and the Henry County Board of Commissioners to remove Confederate monuments located in their respective jurisdictions. In each case, the trial court determined the appellants lacked standing and that their claims were barred by sovereign immunity. For the reasons set forth *infra*, we affirm the trial courts' judgments.

1. The Facts

(a) *The Newton County Cases: A21A0734, A21A0735*. On July 13, 2020, Tiffany Humphries filed a complaint for damages and injunctive relief against the Newton County Board of Commissioners,[1] alleging that the Board intended to hold a special meeting to vote on the removal of a Confederate monument located in Covington, Georgia, in violation of OCGA § 50-3-1. Then, on July 15, 2020, the Sons of Confederate Veterans, General George "Tig" Anderson Camp #2038, and the Georgia Division of the Sons of Confederate Veterans filed a complaint for damages and injunctive relief against the Newton County Board of Commissioners. This complaint alleged that, on the previous day (July 14, 2020), the Board voted to remove a Confederate monument from the square in Covington, Georgia, in violation of OCGA § 50-3-1. In doing so, these plaintiffs asserted that the vote was "notice of [Newton County's] intent to violate OCGA § 50-3-1 by removing the Confederate Monument from its place of honor and prominence in downtown Covington and placing it in storage." All of the Newton County plaintiffs sought treble and

---

[1] Humphries originally named other plaintiffs but eventually limited her complaint to the Board of Commissioners.

2

exemplary damages against the County under OCGA § 50-3-1 (b) (4), as well as injunctive relief to prevent the removal of the statue.

On July 16, 2020, the trial court consolidated the two cases. The court then issued its order on September 14, 2020, concluding that the plaintiffs lacked standing to file suit because they suffered no injury and that, even if they had standing, their claims were barred by sovereign immunity. Accordingly, the court dismissed the complaints for damages and injunctive relief. Even so, the parties agreed that the statue would not be removed during the pendency of this appeal, which was confirmed by court order.

(b) *The Henry County Case: A21A0988.* On July 7, 2020, the Sons of Confederate Veterans, Colonel Charles T. Zachary Camp No. 108, and the Georgia Division of the Sons of Confederate Veterans filed a complaint for damages and injunctive relief against the Henry County Board of Commissioners. In doing so, these plaintiffs alleged that the Board voted to remove a Confederate monument from the courthouse square in McDonough, Georgia, providing notice of its intent to violate OCGA § 50-3-1 by moving the monument to storage. As a result, they sought treble damages, exemplary damages, and injunctive relief.

3

On July 24, 2020, the trial court denied the plaintiffs' request for an emergency temporary injunction, concluding that sovereign immunity barred any grant of injunctive relief. Three days later, the plaintiffs filed an emergency motion for reconsideration and supersedeas, alleging that the Board intended to remove the statue at 10:00 p.m. that same evening. They also attached to this motion a lease agreement between the City of McDonough and Henry County, asserting that, under this agreement, the courthouse square housing the statue was leased to the City and, thus, the County lacked authority to come into the square and remove the monument.

Thereafter, the County moved to dismiss the plaintiffs' complaint for failure to state a claim upon which relief could be granted. And according to this motion, the monument was removed by the County on July 28, 2020. Thus, the County asserted that the request for injunctive relief was moot and further argued that the plaintiffs lacked standing to seek damages under OCGA § 50-3-1 (b). To that end, the County asserted that the plaintiffs' alleged injury was neither concrete nor particularized. The County also maintained that sovereign immunity barred all of the plaintiffs' claims. Finally, the County argued that even if sovereign immunity did not bar the claims and the plaintiffs had standing, the plaintiffs were still not entitled to damages because OCGA § 50-3-1 (b) (4) provides that damages cannot be awarded when the removal

4

of a monument was authorized by the public entity that owns the monument. Later, the County also claimed that, although it owned the property in the courthouse square, it had no record of owning the actual monument, and because OCGA § 50-3-1 only applied to the removal of "publicly owned monuments," there was no violation of the statute by the monument's removal.

The trial court issued its final order on December 15, 2020. In doing so, the court concluded the plaintiffs lacked standing to bring their claims because they had not shown that they "suffered an injury in fact because they have not alleged a concrete or particularized injury." Next, the court found that sovereign immunity was not waived by OCGA § 50-3-1. And finally, the court determined that the claim for injunctive relief was moot.

(c) *Our Jurisdiction.* Although no party challenges our jurisdiction to consider these consolidated appeals, "it is the duty of this Court to inquire into its jurisdiction in any case in which there may be a doubt about the existence of such jurisdiction."[2] We must consider, then, whether we have jurisdiction to consider these as direct

---

[2] *State v. Int'l Keystone Knights of the Ku Klux Klan, Inc.*, 299 Ga. 392, 396 (2) (788 SE2d 455) (2016) (punctuation omitted); *accord Sanders v. State*, 280 Ga. 780, 781-82 (631 SE2d 344) (2006); *Fairclough v. State*, 276 Ga. 602, 603 (581 SE2d 3) (2003).

appeals or whether applications for discretionary appeal were necessary. And in doing so, we conclude these cases were properly brought as direct appeals.

Georgia's appellate courts have consistently refused to require applications in cases concerning executive determinations and those involving rule-making or other determinations of a legislative nature.[3] And under OCGA § 36-5-22.1 (a) (1) and OCGA § 36-9-2, county governments have authority and exclusive jurisdiction to control all county property.[4] So, here, the Boards of Commissioners engaged in their statutorily approved executive function of controlling county property when they adopted resolutions for the removal of specific Confederate monuments from property

---

[3] *Int'l Knights*, 299 Ga. at 404-05 (4) (a); *accord Carson v. Brown*, 348 Ga. App. 689, 694 (1) (c) (i) (824 SE2d 605) (2019).

[4] *See* OCGA § 36-5-22.1 (a) (1) ("The governing authority of each county has original and exclusive jurisdiction over the following subject matters . . . [t]he directing and controlling of all the property of the county, according to law, as the governing authority deems expedient[.]"); OCGA § 36-9-2 ("The county governing authority shall have the control of all property belonging to the county and may, by order entered on its minutes, direct the disposal of any real property which may lawfully be disposed of and make and execute good and sufficient title thereof on behalf of the county."); *see also Dickey v. Storey*, 262 Ga. 452, 454 (423 SE2d 650) (1992) ("The law grants to a county commission a broad discretion to exercise control over public property[.]").

owned by the counties.[5] Thus, we have jurisdiction to consider these cases via direct appeals, and we turn now to the appellants' respective enumerations of error.

2. Standing.

The appellants all argue that the trial courts erred by dismissing their actions on the ground that they lacked standing to sue the Counties. We disagree.

In each of these three appeals, the appellants challenge the Boards' decisions as violating OCGA § 50-3-1 (b) (3), which provides, in relevant part, as follows:

> No publicly owned monument erected, constructed, created, or maintained on the public property of this state or its agencies, departments, authorities, or instrumentalities or on real property owned by an agency or the State of Georgia shall be relocated, removed, concealed, obscured, or altered in any fashion by any officer or agency; provided, however, that appropriate measures for the preservation, protection, and interpretation of such monument or memorial shall not be prohibited.

_____

[5] *See Lindsey v. Guhl*, 237 Ga. 567 (229 SE2d 354) (1976) (considering a direct appeal from superior court's review of decisions made by county board of commissioners when exercising powers granted to such boards by statute); *Jackson v. Gasses*, 230 Ga. 712 (198 SE2d 657) (1973) (considering direct appeal from trial court's review of decision by board of commissioners to relocate county jail to outside of particular city's limits, in which the current jail was located); *see also Int'l Keystone Knights*, 299 Ga. at 400-01 (4) (a) ("[M]any agency determinations unsurprisingly are quintessentially executive in nature, including, for instance, the day-to-day management of agency . . . resources[.]").

7

"Monument" is separately defined in OCGA § 50-3-1 (b) (1) (B) as

> a monument, plaque, statue, marker, flag, banner, structure name, display, or memorial constructed and located with the intent of being permanently displayed and perpetually maintained that is:
>
> (i) Dedicated to a historical entity or historically significant military, religious, civil, civil rights, political, social, or cultural events or series of events; or
>
> (ii) Dedicated to, honors, or recounts the military service of any past or present military personnel of this state; the United States of America or the several states thereof; or the Confederate States of America or the several states thereof.

And "Agency" is defined in OCGA § 50-3-1 (b) (1) (A) as

> any state or local government entity, including any department, agency, bureau, authority, board, educational institution, commission, or instrumentality or subdivision thereof, and specifically including a local board of education, the Board of Regents of the University System of Georgia, and any institution of the University System of Georgia.

The Code section goes on to provide that the removal of a monument without replacing it subjects the responsible party to treble damages, potential exemplary

damages, as well as attorneys fees and court costs.[6] Finally, OCGA § 50-3-1 (b) (5)

provides, in relevant part, as follows:

> A public entity owning a monument or any person, group, or legal entity
> shall have a right to bring a cause of action for any conduct prohibited
> by this Code section for damages as permitted by this Code section.

In these cases, all of the appellants allege that they have standing under OCGA

50-3-1 (b) (5),[7] arguing that—under its broad language—they are "persons" and

"legal entities" who have a "right to bring a cause of action for *any* conduct

---

[6] *See* OCGA § 50-3-1 (b) (4) ("Any person or entity that damages, destroys, or loses a monument or that takes or removes a monument without replacing it shall be liable for treble the amount of the full cost of repair or replacement of such monument and may be subject to exemplary damages unless such person or entity was authorized to take such action by the public entity owning such monument. In addition to treble the cost of repair or replacement and possible exemplary damages, the person or entity shall also be liable for the attorney's fees and court costs expended by the public entity owner of the monument or person, group, or legal entity in any action or proceeding required to establish liability and collect amounts owed. Should a public entity owner of the monument or person, group, or other legal entity prevail in any action under this Code section, such prevailing party shall timely pay for the cost of or repair or placement of the monument upon moneys being collected from the party damaging, destroying, or losing such monument.").

[7] The appellants also assert that they have standing under OCGA § 23-3-2 and OCGA § 23-4-20. *See* OCGA § 23-3-2 ("Any person may, in any civil action, claim equitable relief by appropriate and sufficient pleadings and obtain the equitable relief proper in the case."); OCGA § 23-4-20 ("Any person who may not bring an action at law may complain in equity and every person who is remediless elsewhere may claim the protection and assistance of equity to enforce any right recognized by the law.").

9

prohibited" by OCGA § 50-3-1—*i.e.*, that they have a right to bring a cause of action because the counties have expressed an intent to remove or have already removed Confederate monuments. But the Counties respond that the appellants lack standing because their injuries are "purely psychic" and neither concrete nor particularized. Further, because OCGA § 50-3-1 does not define "damages," the Counties assert that "damages" must be understood as defined in OCGA § 51-12-4—*i.e.*, as "compensation for injury."[8] The trial court agreed with the Counties that the appellants lacked standing, and so do we.

Standing is, of course, a jurisdictional issue that must be considered before reaching the merits of any case,[9] and is a "doctrine rooted in the traditional

---

[8] *See* OCGA § 51-12-4 ("Damages are given as compensation for injury; generally, such compensation is the measure of damages where an injury is of a character capable of being estimated in money. If an injury is small or the mitigating circumstances are strong, nominal damages only are given.").

[9] *See New Cingular Wireless PCS, LLC v. Ga. Dep't of Rev.*, 303 Ga. 468, 470 (1) (813 SE2d 388) (2018) (explaining that standing must be addressed prior to considering the merits of a case); *Sherman v. City of Atlanta*, 293 Ga. 169, 172 (2) (744 SE2d 689) (2013) ("[S]tanding is in essence the question of whether the litigant is entitled to have the court decide the merits of the dispute *or of particular issues*, and litigants must establish their standing to raise issues before they are entitled to have a court adjudicate those issues." (citation & punctuation omitted)); *see also Williams v. DeKalb Cnty.*, 308 Ga. 265, 271 (3) (840 SE2d 423) (2020) ("[T]he question of standing is a jurisdictional issue." (punctuation omitted)).

understanding of a case or controversy."[10] And under federal and Georgia law, standing requires "(1) an injury in fact; (2) a causal connection between the injury and the causal conduct; and (3) the likelihood that the injury will be redressed with a favorable decision."[11] An "injury in fact" is one that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."[12]

---

[10] *Spokeo, Inc. v. Robins*, __ U.S. __, __ (II) (A) (136 SCt 1540, 1547 (II) (A), 194 LE2d 635) (2016); *accord Town of Chester, NY v. Laroe Estates, Inc.*, __ U.S. __, __ (II) (137 SCt 1645, 1650 (II), 198 LE2d 64) (2020); *see Perdue v. Lake*, 282 Ga. 348, 348 (1) (647 SE2d 6) (2007) ("As a general rule, standing must be determined at the time at which the plaintiff's complaint is filed in order to place an actual case or controversy within the purview of the court." (punctuation omitted)); *Bowers v. Bd. of Regents of the Univ. Sys. of Ga.*, 259 Ga. 221, 221-22 (378 SE2d 460) (1989) (Per Curiam) ("The existence of an actual controversy is fundamental to a decision on the merits by this court."); *U-Haul Co. of Ariz. v. Rutland*, 348 Ga. App. 738, 743 (1) (824 SE2d 644) (2019) ("As it relates to standing, we view the requirement that there be an actual case or controversy at the time the complaint is filed."); *see also In the Interest of I. B.*, 219 Ga. App. 268, 269 (464 SE2d 865) (1995) (physical precedent only) (noting that "[t]hroughout Article VI of the Georgia Constitution, jurisdictional authority is given over 'cases'" and "'[c]ases' are live disputes, actual controversies" (footnotes omitted)).

[11] *Granite State Outdoor Advertising, Inc. v. City of Roswell*, 283 Ga. 417, 418 (1) (658 SE2d 587) (2008) (relying upon *Bennett v. Spear*, 520 U.S. 154, 162 (117 SCt 1154, 137 LE2d 281) (1997)); *accord Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (II) (112 SCt 2130, 119 LE2d 351) (1992)); *Parker v. Leeuwenburg*, 300 Ga. 789, 794 (797 SE2d 908) (2017) (Plurality) (Peterson, J., dissenting).

[12] *Ctr. for a Sustainable Coast, Inc. v. Turner*, 324 Ga. App. 762, 764 (751 SE2d 555) (2013) (punctuation omitted) (quoting *Friends of the Earth v. Laidlaw Environmental Svcs.*, 528 U.S. 167, 180-81 (II) (A) (120 SCt 693, 145 LE2d 610)

The Supreme Court of the United States has explained that, for an injury to be "particularized," it "must affect the plaintiff in a personal and individual way."[13] The injury must *also* be "concrete," or put another way, it must "actually exist" and be "real," not "abstract."[14] But this does not mean that the injury must be "tangible."[15] And the legislative branch may "elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law."[16] As a result, the legislature has the power to "define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before."[17] But even when the legislature identifies and elevates intangible harms, "a plaintiff [does not]

---

(2000)); *accord Spokeo*, 136 SCt at 1548 (II) (B); *Lujan v. Defenders of Wildlife*, 504 U.S. at 560 (II); *In re Haney*, 355 Ga. App. 658, 660 (845 SE2d 380) (2020); *see Women's Surgical Ctr., LLC v. Berry*, 302 Ga. 349, 351 (1) (806 SE2d 606) (2017) ("[A] party has standing to pursue a declaratory action where the threat of an injury in fact is 'actual and imminent, not conjectural or hypothetical.'"); *Cheeks v. Miller*, 262 Ga. 687, 688 (425 SE2d 278) (1993) ("A controversy is justiciable when it is definite and concrete, rather than being hypothetical, abstract, academic, or moot.").

[13] *Spokeo*, 136 SCt at 1548 (II) (B) (1).

[14] *Id*. (punctuation omitted).

[15] *Id.* at 1549 (II) (B) (2).

[16] *Id.* (punctuation omitted) (quoting *Lujan*, at 578).

[17] *Id.* (punctuation omitted) (quoting *Lujan*, at 580 (Kennedy, J., concurring in part and concurring in judgment)).

automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."[18] A "concrete" injury is still necessary even in the context of statutory violations.[19]

And here, although OCGA § 50-3-1 (b) (5) broadly provides that "[a] public entity owning a monument or any person, group, or legal entity shall have a right to bring a cause of action for any conduct prohibited by this Code section for damages as permitted by this Code section," the *constitutional* doctrine of standing *still* requires that a cause of action involve a concrete and particularized *injury*.[20] In other

---

[18] *Id.*

[19] *Id.*; *accord Thole v. U.S. Bank N.A.*, __U.S.__, __ (140 SCt 1615, 1620-21, 207 LE2d 85) (2020); *see United States ex rel. v. Mortgage Investors Corp.*, 987 F3d 1340, 1358 (III) (D) (11th Cir. 2021) ("[L]egislatures cannot simply create an injury in fact where there is no concrete injury."); *Perry v. CNN*, 854 F3d 1336, 1340 (I) (11th Cir. 2017) ("The Supreme Court emphasized [in *Spokeo*] that in addition to being particularized, intangible injuries, including statutory violations, must still be concrete."); *see also Cordobo v. DIRECTV, LLC*, 942 F3d 1259, 1268 (II) (A) (11th Cir. 2019) ("In brief, *Spokeo* set forth two rules of law: Congress cannot grant a plaintiff who has not suffered a concrete injury the right to sue in federal court, but Congress has a role in identifying and elevating intangible harms to the level of concrete Article III injuries in fact." (punctuation omitted)).

[20] In contrast with OCGA § 50-3-1 (b) (5), Tennessee's "Heritage Protection Act" contains specific injury requirements to confer standing, as follows: "Any entity, group, or individual who can demonstrate a real interest in a memorial through

13

words, a plaintiff must show that "he has been directly affected apart from his special interest in the subject at issue."[21]

Here, the appellants allege *no* injuries beyond complaining that the removal of the Confederate monuments would violate OCGA § 50-3-1. Suffice it to say, it is not enough for the appellant organizations to tout their dedication to "honor[ing] the memories and legacies of their forefathers who fought for freedom during the War Between the States" or assert that they "will suffer injury to [their] rights and dignity" if the monuments are removed. And as for Humphries, she did not allege any degree of concern with the monuments beyond her status as a private citizen of Newton

aesthetic, architectural, cultural, economic, environmental, or historic injury, through petition for declaratory order, or through administrative involvement in either the waiver or complaint process, has standing . . . ." Tenn. Code Ann. § 4-1-412 (c) (6); *see Sons of Confederate Veterans v. City of Memphis*, No. M2018-01096-COA-R3-CV, 2019 WL 2355332, at *7 (Tenn. Ct. App. June 4, 2019) ("[Plaintiff] demonstrated a real interest only in the Forrest Statue and only because [plaintiff] was involved in the waiver process, which is statutorily identified as a ground for standing." (punctuation omitted)).

[21] *Ladies Mem'l Ass'n, Inc. v. City of Pensacola, Fla.*, No. 3:20CV5681-MCR-EMT, 2020 WL 5237742, at *3 (N.D. Fla. Sept. 2, 2020); *Gardner v. Mutz*, 962 F3d 1329, 1342 (III) (B) (2) (11th Cir. 2020) ("[A] mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified an organization is in evaluating the problem, is not sufficient by itself. Rather, a party seeking review must allege facts showing that he is himself adversely affected." (punctuation omitted) (quoting *Sierra Club v. Morton*, 405 U.S. 727, 739 (92 SCt 1361, 31 LE2d, 636) (1972))).

14

County. These vague claims of "injury" are, then, far too abstract to confer standing on the appellants.[22] Accordingly, because each of the appellants lacked standing, the trial court correctly dismissed all of these actions.

---

[22] *See Ladies Mem'l. Ass'n.*, 2020 WL 5237742, at \*4 (holding that complaints about City's proposed removal of Confederate monument from City square were too abstract to confer standing); *Gardner v. Mutz*, 488 F3d 1204, 1209 (II) (M.D. Fla. 2020) ("Plaintiffs' alleged injury is still too abstract. At bottom, Plaintiffs disagree with the City's decision to move the [Confederate] cenotaph from one park to another. They prefer that the cenotaph remain in Munn Park and are offended at its relocation. But Plaintiffs have only alleged psychic injuries in the form of their disappointment that the cenotaph no longer resides in their preferred location."). *Cf. Hayes v. City of Memphis*, No. W2014–01962–COA–R3–CV, 2015 WL 5000729, at \*11-12 (IV) (Tenn. Ct. App. Aug. 21, 2015) (holding that, in challenge to City's adoption of resolution to rename three parks named to honor the Confederacy, only one of three plaintiffs alleged an injury sufficient to confer standing when that plaintiff's complaint challenged procedure by which City renamed parks and alleged that it "assisted in the preservation and maintenance of Forrest Park through the years by organizing work days and by funding the installation of various markers, statues, monuments, and educational panels in each of the three historic parks" and "the City recognized the desirability of having a new name marker installed in Forrest Park without using taxpayer funds and encouraged [plaintiff's] efforts to do so," "[t]he Director of the City's Division of Park Services actively participated in the design of the name marker, approved its location, and even suggested that the name marker be inscribed to reflect that its installation was the result of a partnership between the Division of Park Services and [plaintiff]," and thus plaintiff's special interest in the name marker gave them a special interest in the name of the park itself sufficient to confer standing to challenge the renaming of the park).

15

3. Sovereign Immunity.

Because we conclude the trial court properly dismissed these actions on the basis that the appellants lacked standing, we need not address the question of whether their claims were also barred by sovereign immunity.[23]

*Judgments affirmed. Mercier and Colvin, JJ., concur.*

---

[23] Since these lawsuits were filed, the Georgia Constitution was amended to waive sovereign immunity so as to permit actions for declaratory and equitable relief. *See* Ga. Const. Art. 1, § 2, ¶ V (b) (1) ("Sovereign immunity is hereby waived for actions in the superior court seeking declaratory relief from acts of the state or any agency, authority, branch, board, bureau, commission, department, office, or public corporation of this state or officer or employee thereof or any county, consolidated government, or municipality of this state or officer or employee thereof outside the scope of lawful authority or in violation of the laws or the Constitution of this state or the Constitution of the United States. Sovereign immunity is further waived so that a court awarding declaratory relief pursuant to this Paragraph may, only after awarding declaratory relief, enjoin such acts to enforce its judgment. Such waiver of sovereign immunity under this Paragraph shall apply to past, current, and prospective acts which occur on or after January 1, 2021.").